# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BARSOUM S. ISRAEL,<br><br>*Plaintiff*,<br><br>v.<br><br>LIEUTENANT DEAN R. SMITH, *et al.*,<br><br>*Defendants*. | Civil Action No:<br>13-cv-0097 (PGS)(LHG)<br><br>**MEMORANDUM<br>AND<br>ORDER** |

This matter comes before the Court on Defendants Lieutenant Dean R. Smith, Earnest Schriefer, Freehold Township, and Freehold Township Police Department's (collectively, "Defendants") Motion for Summary Judgment pursuant Federal Rule of Civil Procedure 56(c) (ECF No. 71). Plaintiff asserts federal civil rights claims under 42 U.S.C. § 1983 for general deprivations of constitutional rights, false arrest, failure to implement appropriate polices and adequately train officers, and excessive force, as well as common law tort claims of assault, battery, intentional infliction of emotional distress, false imprisonment, negligence, and negligent supervision. For the reasons set forth below, Defendants' summary judgment will be granted in part and denied in part.

On December 30, 2010, at approximately 4:52 p.m, Lieutenant Dean R. Smith, who was operating a patrol car, and Plaintiff Barsoum Israel were stopped next to each other at a traffic signal on Route 9 South, in Freehold, New Jersey, waiting to turn onto Route 537. (Plaintiff's Statement of Material Facts at ¶¶ 1-6). Plaintiff's wife, Isis Korashy, was also in his vehicle. As the light turned green, Plaintiff abruptly turned into Smith's lane without using his turn signal, forcing Smith to quickly hit his breaks to avoid a collision. (Defendants' Statement of Material

Facts at ¶ 1). Smith then pulled Plaintiff over in the right lane of Route 537 West. (*Id.*). Plaintiff claims that he was avoiding a large pile of snow stacked on the roadway, when he turned into Smith's lane. (Plaintiff's Statement of Material Facts at ¶¶ 11-13).

After Smith requested Plaintiff's license and other documentation, Korashy asked Smith why he had pulled them over. (Defendants' Statement of Material Facts at ¶¶ 2-3). Smith explained that Plaintiff had switched lanes without using a signal, that he would be issued a summons, and that both of them should remain in their car. (*Id.*). As Smith returned to his patrol car to write the summons, Korashy exited the car and proceeded towards Smith. (*Id.* at ¶¶ 4-5). Smith then exited his patrol car and ordered her to return to the car; despite his repeated directions, she did not comply. (*Id.* at ¶¶ 5-6).

Because Korashy was giving Smith a "hard time out there," he called for backup and warned her that he would arrest her if she did not return to her car. (*Id.* at ¶¶ 7, 11). According to Smith, she challenged him to arrest her. (*Id.* at ¶ 8). At this point, Plaintiff exited the car and approached Smith; Smith then advised Plaintiff he would be arrested if he did not return to his car. (*Id.* at ¶¶ 12, 14). Plaintiff claims that he exited his car because Smith had an aggressive tone towards his wife, and he wished to calm the situation and have his wife return to the car. (Plaintiff's Statement of Material Facts at ¶ 32). According to Plaintiff, Smith then left his car and ran toward Plaintiff, ordering Plaintiff to sit inside of his car. (*Id.* at ¶¶ 33-36). As Smith approached Plaintiff, Plaintiff took his cellular phone from his pocket and purportedly asked Smith, "would you please give me your boss' phone number." (*Id.* at ¶¶ 38-40). According to Plaintiff, Smith became irate and charged at Plaintiff, and placed both Plaintiff's hands on top of the car by the driver's side. (*Id.* at ¶¶ 40-41). While pinned against the car, Plaintiff claims that he informed Smith that he was a handicap, and said "I am in pain right now." (*Id.* at ¶ 41). Smith then allegedly placed Plaintiff

in a "full nelson," lifted him up and slammed him to the ground. (*Id.* at ¶¶ 55-56). In his police report, Smith noted that Plaintiff complained that he had a bad back and medical problems; but also that Plaintiff then tried to break away from him. (ECF No. 85-7, "Exhibit G" at 3). After allegedly throwing Plaintiff to the ground, Smith then knelt on top of Plaintiff's lower back and buttocks and handcuffed him. (Plaintiff's Statement of Material Facts at ¶ 61).

Several witnesses observed the incident and have conflicting descriptions of what took place. Plaintiff relies upon a motorist who called 911 saying, there is "an old man, and a cop stopped him, and old man and an old woman…the cop stopped him and he's harassing the man…he's pushing the man down, he's pushing the old lady and he's throwing him…the old woman is screaming something . . . police brutality." (*Id.* at ¶ 69). However, Defendants refer to several other witnesses, who claim that Plaintiff was the aggressor during the incident and that Smith needed a bystander's assistance to subdue him. (Defendants' Statement of Material Facts at ¶¶ 20-34).

Plaintiff claims that Smith, after handcuffing him, allegedly dragged him to the police car, threw him into the back seat, slammed the door on his foot, and drove him to the police station. (Plaintiff's Statement of Material Facts at ¶ 77). Once at the police station, Plaintiff claims that Smith refused to allow him to sit down and dragged him around the station. (Complaint at ¶ 32).[1]

Plaintiff was ultimately charged with "(1) failure to use a turn signal in violation of N.J.S.A. 39:4-126, (2) unsafe lane change in violation of N.J.S.A. 39:4-88(b), (3) resisting arrest in violation

---

[1] It should be noted that Plaintiff sought to amend his Complaint, in part, to allege "[a]t the police station, two other police officers joined Officer Smith in battering Mr. Israel; they shoved him violently against the wall, causing his head and his body to collide with the wall several times, then forcibly removed Mr. Israel's belt and shoes." However, this amendment to the Complaint was denied. (ECF No. 23 at 15). At the present time, this assertion is presented as a fact to be presented at trial. In the final pretrial order, Plaintiff is arguing that it is included within the claim that he was dragged around the police station. The parties should consider a motion in limine to clarify whether this "shoving" incident is admissible at trial.

3

of N.J.S.A. 2C:29-2A, and (4) obstruction of the administration of law in violation of N.J.S.A. 2C:29-1A." (Defendants' Statement of Material Facts at ¶ 65). Plaintiff eventually pled guilty, in a New Jersey municipal court, to: (1) obstruction of the administration of law, N.J.S.A. 2C:29-1(a), and (2) failure to use a turn signal, N.J.S.A. 39:4-126. (*Id.* at ¶ 66). Plaintiff later sought criminal charges against Smith for bodily assault, contrary to N.J.S.A. 2C:12-1A; however, a New Jersey municipal court judge dismissed the complaint, finding "no probable cause for the issuance of Plaintiff's complaint." (*Id.* at ¶ 67). Plaintiff appealed and it was dismissed by a New Jersey Superior Court judge. (*Id.* at ¶ 68). Thereafter, Plaintiff filed a complaint with the Monmouth County Prosecutor's Office, Professional Responsibility and Bias Crimes Bureau, alleging that Smith used excessive force. (*Id.* at ¶ 69). After investigating the merits of Plaintiff's complaint, the Bureau concluded that Plaintiff's claim was unfounded. (*Id.* at 70).

Plaintiff commenced this lawsuit against the Township of Freehold, the Freehold Township Police Department, Chief Ernest Schriefer, and Lieutenant Dean Smith claiming violations of the First, Fourth, and Fourteenth Amendments, seeking remedies pursuant to 42 U.S.C. § 1983, and various state law claims. Defendants move for summary judgment on all counts.

## LEGAL STANDARD

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence;

4

instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; S*iegel Transfer, Inc. v. Carrier Express, Inc.,* 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").

Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor…that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 F. App'x 222, 227 (3d Cir. 2007).

ANALYSIS

I.   Federal Civil Rights Claims Under 42 U.S.C. § 1983

   *1.   Monell Liability* [2]

In Count III of the Complaint, Plaintiff alleges that Defendants maintained unlawful policies and customs or, in the alternative, failed to adequately train and supervise Smith. Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . .

*Id.* To sustain a claim under Section 1983, a plaintiff must demonstrate: (1) "that they have been deprived of a right 'secured by the Constitution and the laws' of the United States"; and (2) that the defendant "deprived them of this right acting 'under color of any statute'" or state law. *Flagg Bros, Inc. v. Brooks*, 436 U.S. 149, 155 (1978).

Here, Plaintiff's Section 1983 claims against Freehold Township, Freehold Township Police Department, and Chief Schriefer are misplaced for several reasons. First, under New Jersey law, a municipal police department is not treated as a separate entity from the municipality. *See* N.J.S.A. 40A:14-118 (municipal police department is "an executive and enforcement function of municipal government"). Since police departments are administrative components of local municipalities, and not distinct entities, they cannot be sued along with municipalities. *See Padilla*

---

[2]   In Count One, Plaintiff presents "General Allegations" under Section 1983, wherein he alleges violations under Fourth, Fifth, and Fourteenth Amendment. Because this claim does not allege any facts as to particular defendants or the basis for his purported cause of action, Count I is dismissed.

*v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004). As such, summary judgment will granted to Freehold Township Police Department on the Section 1983 claims.

Second, a municipality cannot be held liable under Section 1983 based on a respondeat superior theory. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978). It is hornbook law that "a municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id*. However, a municipality can be sued directly if the constitutional tort was caused by a municipal custom or policy. *Id.* at 690-91. A government entity may be held liable for a constitutional violation if the plaintiff can "identify a policy or custom of the entity that caused the constitutional violation." *A.M. ex rel. J.M.K v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 580 (3d Cir. 2004). The policy must be "officially adopted and promulgated by that body's officers" or made by "those whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 690, 694. A custom can be demonstrated through "a given course of conduct, although not specifically endorsed or authorized by law . . . [that] is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). However, a single isolated incident will not suffice, unless the custom can be demonstrated by other means like "proof of knowledge and acquiescence." *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989). "Proof only of the existence of an unlawful policy or custom is not sufficient, however, to impose municipal liability under section 1983. A plaintiff must also establish that the government policy or custom was the proximate cause of the injuries sustained." *See Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996) (citation omitted); *see also Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004).

Here, Plaintiff presents two theories that allegedly demonstrate *Monell* liability. First, Plaintiff alleges that the police department's failure to preserve video surveillance, which purportedly revealed Plaintiff's "beating at the detention center," demonstrates an unconstitutional policy or culture. (Plaintiff's Brief in Opp. at 25-28). Such spoliation is not alleged in the Complaint, and the spoliation allegation is not a proximate cause of his injuries. "To establish the necessary causation, a plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue." *See Kneipp*, 95 F.3d at 1213.

Alternatively, Plaintiff argues that Lt. George Baumann's failure to conduct an internal affairs investigation into use of force complaints establishes an "unwritten policy or culture" of refusing to investigate excessive use of force complaints. This is dismissed for several reasons. First, "not every decision by municipal officers automatically subjects the municipality to § 1983 liability. Municipal liability attaches only where the decision maker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). Here, discretionary conduct, by itself, is insufficient to establish municipal liability. Ordinarily, exercise of discretionary authority does not impute municipal liability. *See Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000). Second, Plaintiff fails to present any expert testimony or a practice within the police department that demonstrates that it is a common policy, within the field of police procedures, to conduct an investigation into every traffic stop incident. And lastly, the failure to conduct an investigation is not causally related to Plaintiff's injuries.

Finally, Plaintiff asserts inadequate training as the basis for Section 1983 liability against the municipality. In order to show same, plaintiff must demonstrate that "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into

contact." *Canton v. Harris*, 489 U.S. 378, 388 (1989). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). "[A] plaintiff must show specific training deficiencies and either (1) a pattern of constitutional violations of which policy-making officials can be charged with knowledge, or (2) that training is obviously necessary to avoid constitutional violations." *Gaymon v. Esposito*, No. 11-4170, 2012 U.S. Dist. LEXIS 44310, at *23 (D.N.J. Mar. 29, 2012) (citing *Canton*, 489 U.S. at 390).

Here, Plaintiff falls woefully short of establishing facts sufficient to support his municipal liability claims. The only evidence that Plaintiff produces are five unrelated matters where plaintiffs sued Freehold Township under Section 1983 for alleged police brutality. However, Plaintiff does not present the underlying facts of those cases and there is no corroboration of whether the claims had merit. This, alone, is insufficient to satisfy the Plaintiff's burden. Summary judgment is granted on Count III in its entirety.

Finally, with regard to Chief Schriefer, besides his capacity as Chief of Police and purported supervisory and training responsibilities, Plaintiff fails to identify any specific conduct committed by Chief Schriefer that allegedly deprived Plaintiff of his rights. As such, Plaintiff has failed to meet his burden as it relates to Chief Schriefer; therefore, summary judgment is granted to him on Counts I and III.

### 2. *False Arrest*

Under Count II, Plaintiff asserts a claim of false arrest against Defendants. Ordinarily, police may arrest an individual based upon probable cause. *See O'Connor v. City of Philadelphia*, 233 F. App'x 161, 164 (3d Cir. 2007). To sustain a claim for false arrest, a plaintiff must show that he or she was arrested by a state actor without probable cause. *Santiago v. City of Vineland*,

107 F. Supp. 2d 512, 561 (D.N.J 2000). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482-83 (3d Cir. 1995). In the context of a Section 1983 false arrest claim, the inquiry is "not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988).

However, a plaintiff may not prevail on a Section 1983 false arrest claim if the plaintiff's conviction or sentence still stands. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). In *Heck*, the Supreme Court held:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Id.* Here, it is undisputed that Plaintiff pled guilty to obstruction of the administration of law, N.J.S.A. 2C:29-1(a). Since Plaintiff was convicted of the very offense that triggered his arrest, Plaintiff's false arrest claim is barred by *Heck*. *See Nelson v. Jashurek*, 109 F.3d 142, 145 (3d Cir. 1997) (holding that *Heck* would bar "a civil suit for an unreasonable seizure predicated on a false arrest" where the underlying "conviction for resisting the same arrest remained unimpaired"). For that reason, summary judgment on Count II is granted.

### 3. Excessive Force

Count IV of Plaintiff's Complaint accuses Chief Schriefer and Smith of using excessive force in making their arrest. Under Section 1983, excessive force exists "when a law enforcement officer uses force so excessive that if violates the *Fourth* and *Fourteenth Amendments*." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633-34 (3d Cir. 1995). A police officer must use reasonable force in order to effectuate an arrest. *Graham v. Connor*, 490 U.S. 386, 395-397 (1989). To determine reasonableness, courts should consider the severity of the crime at issue, the threat posed to the officers or others, and whether the person being arrested is actively resisting arrest or attempting to flee. *Id*. at 396. The inquiry should be objective, viewed from the perspective of a reasonable officer at the scene. *Id.*; *see also Terry v. Ohio*, 392 U.S. 1, 20-22 (1968). Additionally, the plaintiff must demonstrate that the injury was so egregious as to go beyond the boundaries of tort law and rob the victim of his constitutional rights. *Skevofilax v. Quigley*, 586 F. Supp. 532, 543 (D.N.J. 1984).

Here, Plaintiff's excessive force claim against Chief Schriefer is baseless. Not only did he not effectuate the arrest, but he was not even at the traffic stop. Moreover, Plaintiff does not allege that Chief Schriefer engaged in any abusive behavior towards him at the police station.[3] As such, since Plaintiff fails to identify any purported episode wherein Chief Schriefer used excessive force, summary judgment will be granted to Chief Schriefer on Count IV.

With regards to Smith, however, the facts are not as clear. According to Smith, Plaintiff repeatedly ignored his commands to return to the car, charged at him, resisted arrest, and created a dangerous situation that spilled into traffic, all while Israel's wife was also out of the car and

---

3   *See* footnote 1, supra.

creating a scene. However, from Plaintiff's perspective, he was simply attempting to mitigate the situation between his wife and Smith. It appears Smith reacted when Plaintiff took out his cell phone and asked to speak to Smith's supervisors. At that point, Smith pushed Plaintiff against the car, placed him in a full nelson, threw him to the ground, and knelt on top of his back to handcuff him. Plaintiff also claims there was another use of excessive force at the police station, when Plaintiff was dragged around the station, if it is admissible. Both incidents may constitute excessive force and such a cause of action survives Defendants' motion.

### 4. *Qualified Immunity*[4]

Defendants also move for summary judgment of Plaintiff's claims, since they are entitled to qualified immunity; since Plaintiff has failed to allege any unlawful conduct by Chief Schriefer that would subject him to liability, the Court limits its discussion here to Smith. Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The principle applies if the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (citing *Butz v. Economou*, 438 U.S. 478, 507 (1978)).

---

[4] Defendants also seek to invoke the doctrine of issue preclusion as a basis for summary judgment, contending that the municipal judge's prior determination that Plaintiff lacked probable cause to charge Smith with criminal assault precludes Plaintiff from asserting his present claims. "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Here, the Court sees no reason why this doctrine should apply. In the prior adjudication, the trial court was not presented with Section 1983 claims or allegations of excessive force. As such, since the present issues are notably different than those presented at the probable cause hearing, the Court concludes that collateral estoppel is inapplicable.

In determining whether qualified immunity applies, courts must engage in a two-step inquiry: (1) "do the facts alleged show the officer's conduct violated a constitutional right"; and (2) was this right "clearly established" at the time of the alleged misconduct. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts may address the elements in whichever order they see fit. *See Pearson v. Callahan*, 555 U.S. 223, 235 (2009). For purposes of the present motion, this Court will first consider whether the officers violated a constitutional right. First, courts analyze an officer's conduct "under the Fourth Amendment's 'objective reasonableness' standard." *Graham*, 490 U.S. at 388. Through this "objective reasonableness" lens, courts must consider the circumstances from the officer's "on-scene perspective," not "20/20 vision of hindsight." *Saucier*, 533 U.S. at 205. Second, the Court must decide whether the violated right was clearly established, or "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. Again, "this inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* at 201. At the summary judgment stage, the burden remains on the party claiming the qualified immunity defense, here being Smith. *Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014); *see also, Reedy v. Evanson*, 615 F.3d 197, 223 (3d Cir. 2010) ("The burden of establishing entitlement to qualified immunity is on [the defendant-movant].").

As discussed above, when viewing the evidence in the light most favorable to Plaintiff, there has been sufficient evidence presented establishing that Smith used excessive force against Plaintiff. A reasonable factfinder, accepting Plaintiff's version of events, could conclude that Plaintiff did not pose a threat to Smith, and Smith's slamming of Plaintiff to the ground and standing on top of his back, despite knowing his condition, were unreasonable, especially when considering that these events arose from a traffic stop involving an elderly couple. Moreover, if

13

admitted into evidence, a reasonable jury would surely find that Smith's alleged "dragging" of Plaintiff at the station was unreasonable, given that Plaintiff was already in custody and no longer posed a threat. Second, an individual's right to be free from excessive force from law enforcement has long been established under both the *Fourth* and *Fourteenth Amendments*. Therefore, under *Saucier*'s two-step test, Smith is not entitled to qualified immunity.

II.     State Law Claims

   *1.     Assault and Battery*

Under Counts V and VI of his Complaint, Plaintiff alleges that Smith "knowingly and intentionally" committed assault and battery against him. Smith contends he is entitled to immunity from these claims, under the New Jersey Tort Claims Act. Under N.J.S.A. 59:3-3, "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law." In determining whether an employee has acted in good faith, courts employ "[t]he same standard of objective reasonableness that applies in Section 1983 actions." *Wildoner v. Borough of Ramsey*, 744 A.2d 1146, 1153 (N.J. Sup. Ct. 2000). Therefore, since this Court has already determined that, at this stage, Smith is not entitled to qualified immunity from Plaintiff's Section 1983 claims, it follows that the Torts Claims Act does not shield Smith from liability for allegedly assaulting and battering Plaintiff.

   *2.     Intentional Infliction of Emotional Distress*

In Count VII, Plaintiff maintains that Smith intentionally inflicted emotional distress. "To properly allege an intentional infliction of emotional distress claim under New Jersey law, a plaintiff must claim that (1) the defendant intended to cause emotional distress; (2) the conduct was extreme and outrageous; (3) the actions proximately caused emotional distress; and (4) the emotional distress was severe." *Acevedo v. Monsignor Donovan High Sch.*, 420 F. Supp. 2d 337,

348 (D.N.J. 2006). Plaintiff must also allege that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Buckley v. Trenton Sav. Fund Soc.*, 544 A.2d 857, 864 (N.J. Sup. Ct. 1988) (internal quotation marks omitted)). In general, there must be proof that the emotional stress is "so severe that no reasonable person could be expected to endure it." *Tarr v. Ciasulli*, 853 A.2d 921, 924 (N.J. Sup. Ct. 2004) (internal quotation marks and citation omitted). In determining the severity of the emotional distress, New Jersey courts say that "aggravation, embarrassment, an unspecified number of headaches, and the loss of sleep" are insufficient to make an IIED claim. *Buckley*, 544 A.2d at 864. However, emotional distress has been considered sufficiently severe where it interferes with "day-to-day activities" or requires psychiatric counseling. *Harris v. Middlesex Cty. College*, 801 A.2d 397, 406 (N.J. Super. App. Div. 2002).

Here, the motion record fails to demonstrate the severity of Plaintiff's emotional distress. Although a psychiatrist, Dr. Grigory Rasin, concluded that Plaintiff suffers from Post-Traumatic Stress Disorder that requires "vigorous psychiatric treatment," Plaintiff does not claim to have availed himself of these treatments or allege how this condition has otherwise affected him. (Pl's Brief in Opp. at ¶ 105). In fact, when reviewing the Complaint and Plaintiff's supplemental statement of material facts, the record is bereft of any evidence demonstrating that Plaintiff has received any medical treatment or therapy to address this alleged condition. Since Plaintiff has an expert, this claim survives summary judgment; however, it may be appropriate to review this cause of action by way of a motion in limine where the Court can review the medical opinion of the psychiatrist against the minimal treatment undertaken by Plaintiff.

### 3. Count VIII: False Imprisonment

Plaintiff next asserts a claim for false imprisonment. "A person is falsely imprisoned when that person's freedom of movement is constrained. . . . by force or by threats of force communicated through conduct or words." *Maietta v. United Parcel Serv.*, 749 F. Supp. 1344, 1367 (D.N.J. 1990). In New Jersey, in order to sustain a claim for false imprisonment, a plaintiff must demonstrate: (1) "an arrest or detention of the person against his or her will;" and (2) "lack of proper legal authority or 'legal justification.'" *Mesgleski v. Oraboni*, 748 A.2d 1130, 1138 (N.J. Super. Ct. App. Div. 2000) (quoting *Barletta v. Golden Nugget Hotel Casino*, 580 F. Supp. 614, 617 (D.N.J. 1984)). Here, Plaintiff fails to satisfy the second element for a false imprisonment claim. As discussed above, Plaintiff pleaded guilty to obstruction of the administration of law in municipal court; as such, he cannot argue there was not proper legal authority for the arrest. Therefore, summary judgment on Count VIII will be granted in its entirety.

### 4. Counts IX and X: Negligence and Negligent Supervision

Plaintiff's last two claims allege negligence and negligent supervision. In New Jersey, "[t]o sustain a cause of action for negligence, a plaintiff must establish four elements: (1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." *Townsend v. Pierre*, 110 A.3d 52, 61 (N.J. Sup. Ct. 2015) (internal quotation marks and citation omitted). Plaintiff asserts that Chief Schriefer, the Police Department, and the Township had a "duty to use due care to adopt and implement careful polices, customs, or practices with regard to Freehold Township Police Officers' traffic stops, decisions to arrest, and use of force." (Complaint at ¶ 91). According to Plaintiff, Defendants allegedly breached this duty to by "implicitly or explicitly, adopting and implementing careless and reckless policies . . . allowing employees . . . to falsely arrest individuals." (*Id.* at ¶ 92). However, as discussed above, Plaintiff fails to identify any

purportedly unlawful polices and, more importantly, how these policies caused his injuries. *See supra* pages 5-9.

Finally, Plaintiff asserts a claim of negligent supervision. To defeat Defendant's summary judgment motion on the negligent supervision claim, Plaintiff must demonstrate: "(1) that the employer knew or had reason to know of the 'particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons,' and (2) that through the employer's negligence, the employee's 'incompetence, unfitness, or dangerous characteristics proximately caused the injury.'" *Maddox v. City of Newark*, 50 F. Supp. 3d 606, 636 (D.N.J. 2014) (quoting *Di Cosala v. Kay*, 450 A.2d 508, 514 (N.J. Sup. Ct. 1982)). Here, Plaintiff asserts that "Defendants knew or had reason to know of Officer Smith's unfitness." (Complaint at ¶ 96). However, Plaintiff provides no facts or evidence to support this assertion. There is nothing in the record to indicate that there was information about Smith's past that should have put Chief Schriefer or the Police Department on notice about his "dangerous tendencies." Nor has Plaintiff offered any evidence suggesting that the Police Department's training, or lack of training, facilitated the type of activity that allegedly occurred here. Therefore, summary judgment is granted on Counts XI and X.

## ORDER

This matter having come before the Court on Defendants Lieutenant Dean R. Smith, Earnest Schriefer, Freehold Township, and Freehold Township Police Department's Motion for Summary Judgment pursuant Federal Rule of Civil Procedure 56(c) (ECF No. 71); and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, and for good cause shown, and for all of the foregoing reasons,

IT IS on this 27th day of November, 2017,

**ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part, as follows:

1. Count I (1983 General Allegations) is **GRANTED** in its entirety;

2. Count II (1983 False Arrest) is **GRANTED** in its entirety;

3. Count III (1983 Failure to Implement Policies) is **GRANTED** in its entirety;

4. Count IV (1983 Excessive Force) is **GRANTED** as to the Police Department, Freehold Township, and Chief Schriefer; and **DENIED** as to Smith;

5. Count V (N.J.T.C.A. Assault) is **DENIED**;

6. Count VI (N.J.T.C.A. Battery) is **DENIED**;

7. Count VII (N.J.T.C.A. IIED) is **GRANTED** in its entirety;

8. Count VIII (N.J.T.C.A. False Imprisonment) is **GRANTED** in its entirety;

9. Count IX (N.J.T.C.A. Negligence) is **GRANTED** in its entirety; and

10. Count X (N.J.T.C.A. Negligent Supervision) is **GRANTED** in its entirety.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.