UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BARSOUM S. ISRAEL,<br><br>*Plaintiff,*<br><br>v.<br><br>LIEUTENANT DEAN R. SMITH, *et. al*,<br><br>*Defendants.* | Civil Action No.:<br>13-cv-0097 (PGS) (LHG)<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Defendants Township of Freehold, Chief Ernest Schrieber, and Lieutenant Dean Smith's motion in limine to preclude the expert opinion of Ken E. Williams, Plaintiff Barsoum S. Israel's expert, as impermissible net opinion. (ECF No. 91). The presumed purpose of Williams's testimony is threefold, to establish: (1) *Monell*[1] liability against Township of Freehold; (2) that Lt. Smith used excessive force against Plaintiff; and (3) that Lt. Smith used excessive force against Plaintiff's wife, Isis Korashy, who is not a plaintiff. Defendants' motion seeks to exclude all of Williams's eight opinions, contending that each constitutes impermissible net opinion.

Because Williams's report was prepared prior to the Court's Summary Judgment Opinion, a number of his opinions are no longer relevant for purposes of trial. At Summary Judgment, the Court dismissed Plaintiff's *Monell* claims since: (1) there was no plausible nexus between the municipality's alleged failure to preserve video surveillance and Plaintiff's injuries; (2) Lt. George Baumann's failure to conduct an internal affairs investigation into use of force complaints was not causally related to Plaintiff's injuries; and (3) no facts were presented that Lt. Smith received

---

[1] *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

1

inadequate training. *See Israel v. Smith*, No. 13-0097, 2017 U.S. Dist. LEXIS 194241, at *8-13 (D.N.J. Nov. 27, 2017). Additionally, in a written decision, Magistrate Goodman denied Plaintiff's motion to add Mrs. Korashy as a plaintiff in this matter. (ECF No. 23).

## LEGAL STANDARD

"Under the Federal Rules of Evidence, a trial judge acts as a 'gatekeeper' to ensure that 'any and all expert testimony or evidence is not only relevant, but also reliable.'" *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) (quoting *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997)). When faced with a proffer of expert testimony under Federal Rule of Evidence 702, "the trial judge must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert v. Merrell-Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993). "Rule 702 has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact." *Pineda*, 520 F.3d at 244.

Both parties agree that Mr. Williams is qualified to testify as an expert. *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994).

Next, the proffered testimony must be reliable; that is, "the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *Id.* at 742 (quoting *Daubert*, 509 U.S. at 590). "[S]o long as the process or technique the expert used in formulating the opinion is reliable," such testimony will be deemed admissible. *Id.* Nevertheless, the Third

Circuit has set forth a non-exhaustive list of factors for the court to consider when determining the reliability of the proffered testimony. *See Pineda*, 520 F.3d at 247-48.

"Finally, Rule 702 requires that the expert testimony must fit the issues in the case;" that is, "the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." *Schneider*, 320 F.3d at 404. "In assessing whether an expert's proposed testimony 'fits,' we are asking 'whether [the] expert testimony proffered . . . is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'" *United States v. Schiff*, 602 F.3d 152, 173 (3d Cir. 2010) (citing *Daubert*, 509 U.S. at 591).

## DISCUSSION

Defendants seek to preclude all eight of his opinions as inadmissible net opinion. Plaintiff responds that Williams's opinions are based record evidence and applicable case-law, negating Defendants' net-opinion arguments.

The net opinion rule renders "an expert's bare conclusions, unsupported by factual evidence" inadmissible. *May v. Atlantic City Hilton*, 128 F. Supp. 2d 195, 198 (D.N.J. 2000). "The rule frequently focuses on the failure of the expert to explain a causal connection between the act complained of and the injury allegedly resulting therefrom." *Id.*; *see also Zeller v. J.C. Penney Co.*, No. 05-2546, 2008 U.S. Dist. LEXIS, at *22 n.13 (D.N.J. Mar. 31, 2008) ("[T]he net opinion rule is merely a restatement of the well-settled principle that an expert's bare conclusions are not admissible under Rule 702 of the Federal Rules of Evidence."). "To be admissible as evidence, the expert's opinion must be based on standards accepted by the legal community and not merely on the expert's personal opinion." *Stoeckel v. Twp. of Knowlton*, 902 A.2d 930, 938 (N.J. Sup. Ct. App. Div. 2006). Expert opinions will be stricken as net opinions where they have failed "to give the why and wherefore of their opinion, and have provided a mere conclusion." *Jimenez v. GNOC*

3

*Corp.*, 670 A.2d 24, 27 (N.J. Sup. Ct. App. Div. 1996). This analysis is appropriate when considering whether the opinion will be of "assistance to the trier of fact." *Atlantic City Hilton*, 128 F. Supp. 2d at 198-99. Against this backdrop, the Court next considers each of Williams's proffered opinions.

*Opinion No. 1*

Williams's First Opinion criticizes Lt. Smith for his poor judgment in stopping Israel's motor vehicle at this exact location. Williams states:

> Lt. Smith conducted a valid traffic stop but due to the snow banks on the road, Lt. Smith used poor judgment to initiate the stop at this specific location on Rt. 537 which does not have a shoulder, whereas the Freehold Mall was nearby. Lt. Smith should have followed Mr. Israel, radioed in his handicap license plate to dispatch, received a status report and once closer to the Freehold Mall he should have initiated his stop in a safer location removed from Rt. 537; which, again, does not have a shoulder. Despite the location of the stop creating a hazard, Lt. Smith stopped Mr. Israel in the travel lane.

(Williams Report at 4).

Defendants argue the opinion has little to do with the excessive force claim and is irrelevant. Under Rule 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401(a). Here, whether Lt. Smith erred in stopping Israel's car at this location does not address the issue at hand, whether Lt. Smith used excessive force. There is nothing in the Opinion that relates the location of the stop to the use of excessive force. This Opinion is not relevant to the claim. As such, Opinion One is precluded.

*Opinion No. 2*

Williams's Second Opinion concludes that Lt. Smith violated state law by failing to use the "broken record" strategy when he interacted with Mrs. Korashy, and Lt. Smith "snapped" in

4

his demeanor. Specifically, Defendants contend, "not only is this [opinion] irrelevant as Ms. Korashy is not a plaintiff in this matter, but Mr. Williams fails to cite the source of this 'strategy' and how deviation from this strategy supports a cause of action for unlawful arrest or excessive force by plaintiff." (Defs' Motion in Limine at 4).

In his second opinion, Williams concludes, in pertinent part:

> Despite seeing that Mrs. Korashy posed no threat to Lt. Smith, he refused to use the "broken record" strategy with Mrs. Korashy, to simply repeat calmly his intent to issue the summons to Mr. Israel. . . . It is unreasonable for Lt. Smith to yell at Mrs. Korashy that she was under arrest, simply because she wanted to talk with him. At this critical moment Lt. Smith has committed a constructive seizure of Mrs. Korashy. Lt. Smith already displayed to Mrs. Korashy his intent is to arrest her, and already called for backup before he began to walk towards Mrs. Korashy. Lt. Smith should have chosen to pause and wait for his backup; to de-escalate, or he could have just engaged Mrs. Korashy who posed no threat, and used the "broken record" strategy to repeat his intention, until the process was over. . . . Whereas Mrs. Korashy did not even commit a crime or pose any threat, Lt. Smith basically failed to communicate in a calm voice to Mrs. Korashy, and in doing so he more than likely "*snapped*" in his demeanor, directed towards her, and decided to arrest her for absolutely nothing. Lt. Smith violated New Jersey State law, the Attorney General Guidelines, and even the Freehold Township Police Department's Rules and Regulations toward the public.

(Williams Report at 9) (emphasis added).

Here, since Mrs. Korashy is not a party in this case, the Court finds Williams's second opinion irrelevant. As noted above, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401(a). Here, whether Lt. Smith failed to properly utilize the "broken record" strategy in his interaction with Mr. Korashy does not relate to Plaintiff's excessive force claim. Moreover, Williams's conclusion that "[Lt. Smith] more than likely '*snapped*,'" crosses from expertise in police procedures into the specialized knowledge of psychology, upon which Williams is not qualified to opine. Opinion No. 2 is precluded as irrelevant.

*Opinion No. 3*

Williams's Third Opinion concludes that Lt. Smith used excessive force. Defendants contend this opinion is inadmissible since it is predicated on his opinion that the eye-witnesses misperceived the events, which "usurps the authority of the jury to weigh the credibility of witness testimony." (Defs' Motion in Limine at 5).

In Opinion No. 3, Williams concludes that "Lt. Smith used Excessive Force against a person with a disability, even after being told Mr. Israel had pre-existing painful conditions." (Williams Report at 17). In arriving at this conclusion, Williams explained that since Plaintiff's license plate and driver's license both indicated that Plaintiff was disabled, Lt. Smith should have been aware of Plaintiff's disabilities, and should have exercised due care in handling the situation, which he allegedly did not. With regard to eye-witness testimony, Williams explained, "[i]t is likely what some lay witnesses thought they saw as resisting was, in fact, [Plaintiff] flailing because he was in extreme back pain." (Williams Report at ¶ 1.4.1).

Here, the Court finds Opinion No. 3 admissible. First, this opinion is clearly relevant, as it addresses the issue of whether Lt. Smith used excessive force. Fed. R. Evid. 401(a). Second, contrary to Defendants' assertion, this conclusion is largely supported by the factual record, and is fit to assist the jury in determining whether Lt. Smith used force. Finally, Defendants' concern that this opinion will usurp the jury's role can be cured on cross-examination and, if need be, with a curative instruction.

This being said, the Court notes that several underlying assertions made by Williams in arriving at this conclusion shall be barred at trial. First, in arriving at Opinion No. 3, Williams explains, "I have been married for 28 years. Any reasonable husband would have exited the car and tried to help calm the situation if he heard an officer threaten to arrest his wife, knowing she

did not commit any crime." (Williams Report at ¶ 1.3.3). This assertion is one for the jury to decide. As such, this portion of the opinion is barred. *See Atlantic City Hilton*, 128 F. Supp. at 198.

Second, Williams's reference to the LAPD's beating of Rodney King, and the subsequent 1992 Los Angeles riots, is far more prejudicial than probative. (Williams Report at ¶ 1.3.7). Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. "[C]ourts should exclude evidence that risks 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one'" *United States v. Guerrero*, 803 F.2d 783, 786 (3d Cir. 1986) (quoting Advisory Committee Notes, Fed. R. Evid. 403)). Here, reference to Rodney King has minimal probative value, since the factual circumstances relating to King's arrest are significantly different from the present matter. However, the danger of unfair prejudice is great, since it risks confusing the facts of the case and, more importantly, inflaming the passions or prejudices of the jury. Therefore, this portion of Williams's opinion is also precluded, as its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403.

Finally, Williams's assertion that "[i]t is likely what some lay witnesses thought they saw as resisting was, in fact, [Plaintiff] flailing because he was in extreme back pain," (Williams Report at ¶ 1.4.1), is purely speculative and unfounded. Williams has no such knowledge. Williams did not witness the traffic stop, nor did he personally interview any of the eye-witnesses to assess their thought process. It is well-settled that "expert testimony [is] inadmissible where [the] expert's 'opinion is purely speculative, and not supported by a reliable foundation.'" *Casper v. SMG*, 389 F. Supp. 2d 618, 623 (D.N.J. 2005) (quoting *Am. Marine Rail NJ, LLC v. City of Bayonne*, 289 F.

Supp. 2d 569, 589 (D.N.J. 2003)). Being that this assertion is conjectural, it is unreliable and, therefore, inadmissible under Rule 702.

In sum, Opinion No. 3 is admissible; however, Williams's conclusions in paragraphs 1.3.3, 1.3.7, and 1.4.1 are precluded for the reasons discussed above.

*Opinion No. 4*

In Opinion No. 4, Williams states:

> When [the officers] ordered the removal of Mr. Israel's shoes and not the shoe laces, and he was subsequently assaulted against the wall by Lt. Smith and other officers, this more than likely constituted harassment.

(Williams Report at 21).

In this case, the testimony concerning the events at the police station have been limited. As such, this Opinion is beyond the facts that can be presented at trial. As a result, the opinion is barred.

*Opinion Nos. 5, 6, and 7*

Williams's Fifth, Sixth, and Seventh Opinions focus on allegations of spoliation and collusion. Defendants argue that these opinions are "pure speculation and Mr. Williams fails to cite to any piece of evidence, let alone any statute, regulation, or standard." (Defs' Motion in Limine at 5).

In Williams's Fifth Opinion, he opines that Lt. Smith is guilty of having tampered with evidence:

> From the very moment Lt. Smith yelled at Mrs. Korashy on Rt. 537 that she was under arrest, Mr. Israel sought to file a complaint against Lt. Smith via telephone, when he pulled-out his phone and requested to call Lt. Smith's "boss." This enraged Lt. Smith, who truncated Mr. Israel's attempt to call-in a complaint, by proceeding to arrest Mr. Israel, which Lt. Smith effectuated in the most painful manner, despite notice that Lt. Smith should be careful due to Mr. Israel's handicap license plate, Mr. Israel's verbal notice complaining of his back pain, and Mr. Israel

8

> flailing from the pain. . . . Lt. Smith should have put Mr. Israel in contact with an officer to take the complaint. Lt. Smith should have abstained from tampering with the evidence, so that the Internal Affairs process may take its course. As a result of demeanor complaints being ignored Freehold Township Police Department is demonstrating it isn't interested in correcting police abuse directed at members of the community the police protect and serve. Prior lawsuit filings against the Freehold Township for the conduct of Freehold Township Police Department . . . demonstrate a culture that is discourteous, knowingly abusive, and violates the trust of citizens. . . . That Mr. Israel attempted to file an Internal Affairs Complaint against Lt. Smith several times without success, is a systemic problem. Failure by Freehold Township officers to take Mr. Israel's complaint violates the State of New Jersey's Attorney General Guidelines, as a mandated reporter.

(Williams Report at 23).

Similarly, in his Sixth Opinion, Williams concludes that Lt. Smith colluded with other officers, in attempting to destroy evidence:

> Despite statutory duties to retain all evidence relevant to this matter, Lt. Smith colluded with Mr. Solowey to destroy video from the Freehold Township detention center that would have exposed the incident of Freehold Township Police officers, led by Lt. Smith, accosting Mr. Israel at this detention center.

(Williams Report at 32-33).

Finally, in his Seventh Opinion, Williams concludes:

> The Monmouth County Prosecutor's investigation into Mr. Israel's complaints against Lt. Smith was botched due to evidence not available to the prosecutor. The investigation was decided in favor of Lt. Smith, because Lt. Smith and Mr. Solowey tampered with video file evidence, deleted some video and edited the video that was produced in Discovery during this case. There is no indication that even the video edited by Mr. Solowey was presented to the Monmouth County Prosecutor by Lt. Baumann. Lt. Smith and Mr. Solowey have not been reprimanded for the destruction of evidence, in violation of New Jersey statutes and the Attorney General Guidelines.

(Williams Report at 34).

These three opinions are inadmissible for several reasons. First, as noted above, the Court previously ruled at Summary Judgment that Plaintiff's *Monell* claims were dismissed, since Plaintiff failed to establish a causal connection between his injury and the Freehold Township's

alleged unlawful policies or customs. *See Israel*, 2017 U.S. Dist. LEXIS 194241, at *8-13. As such, since these three opinions address the issue of *Monell* liability, they are no longer relevant for purposes of trial. *See* Fed. R. Evid. 401(a). Second, Williams offers no standard upon which these opinions are based. "To be admissible as evidence, the expert's opinion must be based on standards accepted by the legal community and not merely on the expert's personal opinion." *Stoeckel*, 902 A.2d at 938. Here, however, Williams does not specify what specific training, experience or standard he employed in determining that Lt. Smith tampered with evidence and altered surveillance videos. As such, because these opinions are "not supported by a reliable foundation," they are unreliable and, therefore, inadmissible under Rule 702. *See Casper*, 389 F. Supp. 2d at 623. Finally, these opinions fail to demonstrate a "causal connection between the act complained of and the injury allegedly resulting therefrom." *Atlantic City Hilton*, 128 F. Supp. 2d at 198. For the foregoing reasons, Williams's Fifth, Sixth, and Seventh Opinions are precluded.

*Opinion No. 8*

Finally, Defendants seek to preclude the admissibility of Williams's Eighth Opinion since he "merely speculates that the police department was unwilling to investigate the plaintiff's complaint against Lt. Smith, but fails to point to any specific regulation or standard from which defendant police department deviated." (Defs' Motion in Limine at 5). Williams states:

> Lt. Baumann did not follow the State of New Jersey Attorney General Guidelines which requires every law enforcement agency must accept reports of officer misconduct from any person.

(Williams Report at 39). As discussed above, because the Court's Summary Judgment Opinion previously dismissed this argument, Opinion Eight is dismissed as irrelevant and because the Monmouth County Prosecutor's Office also reviewed the matter. *See Israel*, 2017 U.S. Dist. LEXIS 194241, at *11-12; *see also* Fed. R. Evid. 401(a).

# ORDER

This matter having come before the Court on Defendants' motion in limine (ECF No. 91); and for good cause having been shown;

IT IS on this 16th day of April, 2018;

**ORDERED** that Plaintiffs' motion in limine to preclude the expert of Ken E. Williams is granted in part and denied in part as follows:

1. **GRANTED** as to Opinion One;
2. **GRANTED** as to Opinion Two;
3. **DENIED** as to Opinion Three;
4. **GRANTED** as to Opinion Four;
5. **GRANTED** as to Opinion Five;
6. **GRANTED** as to Opinion Six;
7. **GRANTED** as to Opinion Seven;
8. **GRANTED** as to Opinion Eight.

_____
PETER G. SHERIDAN, U.S.D.J.